## Ohio and Mississippi R. R. Co. v. William Collarn.

1. *Demurrer to Evidence, Effect of.*—On a demurrer to evidence everything will be taken against the party demurring which the evidence tends to prove, including every fair inference to be drawn from it.

2. *Negligence of Co-employe.*—A paragraph charging negligence upon the part of the company itself, and not directly upon the co-employe, is good on demurrer.

3. *Negligence of Co-employe—When Company Liable for.*—While a railroad

company is not responsible to one employe for an injury resulting from the mere negligence or incompetency of a co-employe in the same general employment, it is liable in such case where the company has been guilty of negligence in the employment of, or, after notice, continuance in employment of the negligent or incompetent employe, thereby conducing to the injury.

4. *Notice in Such Cases—Notice to Agent, Notice to Principal.*—Notice to the master mechanic of the negligence of those under his control, is notice to the company.

5. *Negligence—Question of Law and Fact.*—In what cases the question of negligence is a question of law and when a question of fact.

6. *Immaterial Error.*—If the judgment can be sustained without one of the paragraphs of a complaint, it is an immaterial error to hold it good when the verdict was not based upon it, even though it may be bad.

Filed May 25, 1881.

Appeal from Washington Circuit Court.

C. A. Beecher and E. C. Devore, for appellant, cited Sher. & Red. on Neg. §8, p. 113; Whart. on Neg. §224, p. 224; 1 Redfield on Railways (5 Ed.) §131, p. 543; *M. & I. R. R. Co.* v. *Bacon,* 6 Ind. 205; *Wilson* v. *Mad. Ind. R. R. Co.,* 18 Ind. 226; *T. & St. L.* v. *A. & T. H. R. R. Co.* 22 Ind. 26; *C. & G. E. R. R. Co.* v. *Harney,* 28 Ind. 28; *C. & I. C. R. R. Co.* v. *Arnold,* 31 Ind. 174, as to liability of railroad company for injury to employe; Sher. & Red. on Neg. (3 Ed.) §§100, 108, 109; Whart. on Neg. §229; *Farwell* v. *B. & W. R. R. Co.* 4 Metc. 49; *O. & M. R. R. Co.* v. *Tindell,* 13 Ind. 366; *Wilson* v. *R. R. Co.* 18 Ind. 226; *Slattery, adm'r* v. *T. & W. R. R.* 23 Ind. 81; 5 N. Y.; 8 Ohio St. 249; 11 Ohio St. 417; 12 Ohio St. 475; *C. & I. C. R. R. Co.* v. *Arnold,* 31 Ind. 174; *Farwell* v. *R. R. Co. supra;* *Wright* v. *N. Y. C. R. R. Co.;* *Slattery, adm'r* v. *T. etc. R. R. Co.* 23 Ind. 81; *C. & I. C. R. R. Co.* v. *Arnold's adm'r,* 31 Ind. 174, as to who are co-employes; Wood. Law, M. & S. §§346, 368, 382, 419, 425; *Slattery's adm'r* v. *R. R. Co., supra;* *Chicago, etc., R. R. Co.* v. *Harney,* 28 Ind. 28; *O. & M. R. R. Co.* v. *Hammersly,* 28 Ind. 371; *Columbus, etc. R. R. Co.* v. *Arnold's adm'r, supra;* *Farwell* v. *R. R. Co. supra;* *Young* v. *R. R. Co.* 30 Barb. 229; *T. W. etc.* v. *Dierkin* 76 Ind. 395; *Tarrant* v. *Webb,* 18 C. B. 797; *O'Donnell* v. *R. R. Co.* 59 Pa. St. 239; *Baulec* v. *R. R. Co.* 59 N. Y. 59; *R. R. Co.* v. *Murphy,* 53 Ill. 336; *Moss* v. *R. R. Co.* 49 Mo. 167; *Gilshannon* v. *R. R. Co.* 10 Cush. 336; *Davis* v. *R. R. Co.* 20 Mich. 105, as to presumption in matters of negligence; *Curry* v.

*Keyser*, 30 Ind. 214, as to manner of pleading fraud; 29 Ind. 426, as to averments concerning negligence; 1 Chitty on Pl. p. 231; 1 Sand. Pl. and Ev. 739; *McManus* v. *Cricket*, 1 East. 110; Wood. Law, M. & S. §§416, 417, 418, 452; *Slattery* v. *R. R. Co., supra*; *C. &. I. etc., R. R. Co.* v. *Arnold, supra*; *Farwell* v. *R. R. Co., supra*; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562; *Warner* v. *R. R. Co.*, 39 N. Y. 468; *Wigget* v. *Fox*, 36 E. L. & Eq. 486; *Wilson* v. *Merry*, 6 McPherson 84; *Northcoat* v. *Bacheler*, 111 Mass. 322, as to degree of care requisite on the part of a company; *Baulee* v. *R. R. Co.*, 59 N. Y. 356; *Beaulieu* v. *Portland, etc., R. R. Co.* 48 Me. 291; *Moss* v. *R. R. Co.* 49 Mo. 167; *Columbus, etc., R. R. Co.* v. ———, 12 Ohio St. 475; *Davis* v. *R. R. Co.* 20 Mich. 105; *Hunz* v. *Stewart*, 1 Dailey 431; Wood Law M. S. § 419, as to presumption of the performance of duty: Smith's M. &. S., side p. 160; Red. on Neg. §§ 59, 62; *Limpus* v. *Lindon Omnibus Co.* 1 Hurl & Colt. 541; *Patton* v. *Lindon & S. W. R. R. Co.*, L. R 2 Q. B. 535; *Little Miami R. R. Co.* v. *Wetmore* 19 O. S. 110; *Durgin* v. *Munson*, 9 Allen, 396; *Shea* v. *Sixth Av. R. R. Co.* 62 N. Y. 180; *Shirley* v. *Billings*, 8 Bush. 147, as to what acts of a servant impose liability on the master; 1 Chitty Blackstone, pp 53, 54; 1 Bouv. Law Dic. 359; *Harper* v. *Pound*, 10 Ind. 32; *Wallace* v. *Morgan*, 23 Ind. 399, as to local usage; *C. &. C. etc., R. R. Co.* v. *Loomis*, 13 Ill. 548; *Telfer, Adm'r* v. *Northern R. R. Co.* 30 N. J. 188, as to failure to ring a bell or sound a whistle; Shear. & Red. on Neg. § 43; Wood L. M. & S. etc. § 382; *Ind. Cent. R. R. Co.* v. *Hudelson*, 13 Ind. 325; *Evansville, etc., R. R. Co.* v. *Lowdermilk*, 15 Ind. 120; *Same* v. *Hiatt*, 17 Ind. 102; *I. P. etc., R. R. Co.* v. *Keeley*, 23 Ind. 133; *T. &. W. R. R. Co.* v. *Goddard*, 25 Ind. 185; *Evansville, etc., R. R. Co.* v. *Dexter*, 24 Ind. 44; *Jeff. R. R. Co.* v. *Hendricks*; 26 Ind. 229; *T. H. etc. R. R. Co.* v. *Graham*, 46 Ind. 239; *Dickey* v. *Tel. Co.*, 43 Me. 492; *Lane* v. *Crobie*, 12 Pick. 177; *Park* v. *O'Brien*, 23 Conn. 339; *Butterfield* v. *Forrester*, 11 East. 60; *Murphy* v. *Dean*, 101 Mass. 455; *Dresler* v. *Davis*, 7 Wis. 527; *Potter* v. *Chicago, etc., R. R. Co.*, 21 Wis. 372; *Owings* v. *Jones*, 9 Md. 108; *Aurora Branch R. R. Co.* v. *Grimes*, 13 Ill. 585; *Dyer* v. *Talcott*, 16 Ill. 300; *Button* v. *Hudson R. R. Co.* 18 N. Y. 248; *Owen* v. *Hudson R.*

*R. Co.* 35 N. Y. 516; *Lake Shore, etc., R. R. Co.* v. *Miller,* 25 Mich. 274; *Catawissa R. R. Co.* v. *Armstrong,* 49 Pa. St. 186; *McKeon* v. *Citizens' R. R. Co.* 43 Mo. 405, that the plaintiff must prove himself free from fault or negligence; 15 Ind. 487; 25 Md. 185; 75 Ill. 106; 35 Pa. St. 60; 1 Allen 9; 41 N. Y. 502, as to care requisite on the part of plaintiff; Sher. & Red. on Neg., § § 29, 30, 33, 34; 11 East. 60; 17 Ind. 102; 17 Ind. 106; 15 Ind. 120; 18 Ind. 215; 22 Ind. 376; 23 Ind. 133; 24 Ind. 411; 25 Ind. 185; 26 Ind. 459; 28 Ind. 441; 29 Ind. 82; 33 Ind. 333; 35 Ind. 510; 41 Ind. 510; 46 Ind. 25; 46 Ind. 239; 47 Ind. 43; 47 Ind. 454; 49 Ind. 93; 2 Pick. 621; 25 Barb. 600; 41 Barb. 375; 27 Barb. 221; 18 N. Y. 238; 8 Ohio, 570; 34 Ia. 568; 46 Ill. 74; 53 Ill. 115; 52 Ill. 325; 25 Mich. 290; 8 Allen, 138; 10 Allen 532; 40 N. Y. 9; 24 N. Y. 430; 41 N. Y. 502; 40 N. Y. 42; 55 Pa. St. 396; 49 Pa. St. 60; 30 N. J. 188; Whart. on Neg. § § 384, 804; 34 Ia. 160; 41 N. Y. 296; 39 N. Y. 61; 13 Ill. 548; 16 Ill. 198; 47 Pa. St. 300; 68 Ill. 576; 64 Ill. 610; 40 Ill. 218; 20 Ill. 235; 63 Ill. 178; 47 Ill. 514, as to contributory negligence.

Jason B. Brown, for appellee, cited *Patterson* v. *P &. C. etc.,* 76 Pa. St. 389; *P. Ft. W. etc.,* v. *Ruby,* 38 Ind. 294; *C., R. I. & P. etc.,* v. *Doyle* (Kansas, April 17, 1877), as to notice to company of unfitness of employes; *P. Ft. W. etc.,* v. *Ruby, supra;* 2 Duv. (Ky.) 114; 47 Mo. 567; 46 Mo. 163; Hurl. & G. 352; 7 H. & N. 942; 19 C. B. (N. S.) 371; 59 N. Y. 356, 517; 64 N. Y. 5; 49 N. Y. 521, 672; 110 Mass. 240; 29 Ia. 14; 15 Pa. St. 151; 78 Pa. St. 26; 17 Wall. 553; 53 N. Y. 549; 18 C. B. 797; 2 T. & C. (N. Y.) 353; 3 F. &. F. 622; 102 Mass. 572; 52 Mo. 372; 38 Mo. 228; 10 Allen, 233; 13 Allen, 441; 37 Wis. 290; Redfield on Railways, vol. 1, 552; Wood L. M. & S. 390, 392, as to care in the employment of servants; Sher. & Red. on Neg. §§ 2, 10, 11; 5 Denio. 255, 267, as to what negligence is; 35 Ind. 510; 26 Ind. 76, 370; 37 Ind. 365; 44 Ind. 76; 46 Ind. 229; 47 Ind. 369; 50 Ind. 83; 34 Eng. Com. Law, 787, 842, as to gross negligence; 69 Ill. 461; 32 Ia. 357; Wood, § 403, as to laxity in enforcing rules; 1 Blkf. (new ed.) 109; 2 Blkf. 376; 4 Blkf. 266; 8 Blkf. 540; 8 Ind. 269; 54 Ind. 47; 55 Ind. 69; 38 Ind. 348; 42 Ind. 294; 48 Ind. 100; 46 How. Pr. 510; 48 How. Pr. 374; 45

How. Pr. 48; 30 How. Pr. 219; Phillips on Ev. (5 Am. Ed.)
vol. 2, 842; 17 Wall. 657; 29 Ia. 14, as to demurrer to evidence;
12 Q. B. 439; 49 N. Y. 47; 8 Allen, 441; 7 H. & N. 937; 53
N. Y. 549; Wood, § 388, that the jury decides on negligence as a
matter of fact; Sher. & Red. §§ 25, 36, 37; 4 Ind. 95; 9 Ind.
398; 15 Ind. 120; 26 Ind. 76; 50 Ind. 83, as to contributory
negligence; 38 Ind. 294; 43 Ind. 183; 2 Duv. (Ky.) 114; 76 Pa.
St. 389; 106 Mass. 461; 99 Mass. 164; 101 Mass. 101; 104
Mass. 137; 105 Mass. 203; 101 Mass. 51; 53 N. Y. 549;
Whart. on Neg. §§ 245, 383; Wood, § 387, as to duty of employe
to obey orders; 44 Ind. 76; 47 Ind. 368; 47 Ill. 298; 49
Pa. St. 60; 45 N. Y. 846; S. & R. on Neg. § 481, as to signaling;
4 Ind. 95; 6 Ind. 114; 5 Ind. 420; 15 Ind. 120; 10 Ind. 559; 17
Ind. 102; 26 Ind. 374; 30 Ind. 262; 33 Ind. 364; 46 Ind. 229; 50
Ind. 83; 53 Ind. 310; 9 Ind. 399; 22 Ind. 28; 26 Ind. 78; 46 Ind.
242; 47 Ind. 485; 371; 2 Duv. 114; 8 N. Y. 175; Wood § 359,
as to comparative negligence; 47 Ind. 370, 471; 35 Barb. 389; 15
N. Y. 444; 10 Minn. 418, as to averment and proof of negli-
gence; 13 N. Y. 533; 15 N. Y. 383; 35 N. Y. 38; 32 Barb.
147; 58 Barb. 184; 30 N. Y. 373; 34 N. Y. 404; 29 N.
Y. 592; 43 How. Pr. 399; 17 Wall. 657; 41 Ind. 254; 29 Ia.
14; 24 How. Pr. 173; 62 N. Y. 251; 23 How. Pr. 166; 5 Eng. Rep.
(Moak's Notes); Wood, §§ 360, 361, 418, 421, 422; 40 N. Y. 9;
40 How. Pr. 274; 35 Ind. 510; 44 Ind. 76; 47 Ind. 371; 47 Mo.
567; 78 Pa. St. 25; 106 Mass. 282; 49 N. Y. 521; 1 Cent. L. J.
373, that negligence is a question of fact; 1 Allen 187; 17 Ill. 580;
17 Ill. 509; 23 Vt. 387; 2 Duv. 114; 10 Ind. 554; 49 N. Y. 521;
2 Lans. 506; 49 N. Y. 672; 7 Mo. 567; S. & R. on Neg. § 102;
38 Ind. 318; 47 Mo. 567; 59 N. Y. 356; 38 Ind. 294; 10 Allen
233; 13 Allen 443; 18 C. B. 797; 46 Ill. 99; 20 Mich. 105; 12
Minn. 357; 55 Pa. St. 460; 46 Mo. 163; 52 Ill. 401; 49 Mo.
167; 47 Mo. 567; 23 Ind. 133; 28 Ind. 28; 47 Ind. 454; 51
Ind. 150; Wood, § 419, as to rules concerning co-employes; 11
Ind. 458; 23 Ind. 133; 26 Ind. 370, 443; 35 Ind. 510; 46 Ind.
239; 47 Ind. 369, 399; 47 Ind. 471; 51 Ind. 150; 53 Ind. 307;
2 Cent. L. J. 705, as to averments in pleading; 2 Blkf. 167; 2
Blkf. 465; 11 Ind. 88, 160; 5 Blkf. 574; 30 Ind. 102; 39 Ind.
509; 43 Ind. 183; 24 Cal. 513; 25 Cal. 460; 26 Conn. 405;

10 Ga. 37 ; 26 Ga. 256 ; 37 Ga. 258 ; 48 Ga. 120; 14 Ia. 364 ; 2 Gilm. 436 ; 3 Scam. 487 ; 35 Ill. 487 ; 38 Ill. 242 ; 40 Ill. 220 ; 55 Ill. 492; 52 Ill. 184 ; 57 Ill. 265 ; 60 Ill. 322 ; 1 Bibb, 247 ; 2 Bibb, 593 ; 4 Litt. 117 ; 1 Marsh. 345 ; 2 Marsh. 365 ; 3 J. J. Marsh. 330 ; 3 Dana, 582 ; 10 B. Mon. 256 ; 16 B. Mon. 185 ; 2 Duv. 559 ; 2 Met. (Ky.) 122, 560 ; 17 La. Am. 19 ; 27 Miss. 88 ; 36 Miss. 661 ; 44 Miss. 466 ; 21 Mo. 357 ; 37 Mo. 240 ; 36 Mo. 352 ; 54 Mo. 180 ; 58 Mo. 421 ; 4 Shepley, 187 ; 53 Md. 32 ; 4 Mass. 45 ; 16 Pick. 541 ; 8 Pick. 122 ; 5 Gray, 45 ; 2 Minn. 43 ; 9 Johns. 51 ; 7 Cowen, 609 ; 6 Id. 214 ; 9 Wend. 470 ; 23 Wend. 425 ; 15 N. Y. 415 ; 12 Barb. 492 ; 19 Barb. 462 ; 47 Barb. 47, 515, 196 ; 56 Barb. 426 ; 63 Barb. 260 ; 64 Barb. 438 ; 53 Pa. St. 276 ; 63 Pa. St. 276 ; 5 Wall. 105, as to excessive damages ; 47 Ind. 198, as to *remittitur ;* 3 M. & W. 1 ; 1 Am. Railway cases (5 Ed.) 569 ; 1 McMullan, 385 ; 4 Met. (Mass.) 49 ; 5 Ind. 340 ; 6 Ind. 205 ; 7 Ind. 436 ; 13 Ind. 367 ; 10 Ind. 557 ; 38 Ind. 294 ; 23 Ind. 81 ; 31 Ind. 174 ; 2 Duv. 114 ; 60 Ill. 171 ; 56 N. Y. 44 ; Whart. on Neg. § 241 ; 47 Ill. 110 ; 45 Ill. 197 ; 52 Ill. 401, as to who are co-servants, and liability of company in case of injury to a servant by a co-servant.

Opinion of the Court by Mr. Justice Worden.

Complaint by the appellee against the appellant in four paragraphs.

Demurrer for want of sufficient facts to each paragraph. Sustained as to the first and second, and overruled as to the third and fourth paragraphs, and exception.

Issue on the third and fourth paragraphs, and trial by jury. The defendant demurred to the plaintiff's evidence, and the jury assessed the plaintiff's damages, conditionally, at $7,000. The court overruled the defendant's demurrer to the evidence, and the defendant moved for a new trial, on the ground that the damages assessed were excessive. This motion was overruled, and judgment rendered for the plaintiff for the damages assessed.

Errors are assigned upon the overruling of the demurrers to the third and fourth paragraphs of the complaint, the demurrer to the evidence, and the motion for a new trial.

The following is the fourth paragraph of the complaint :

*Fourth Paragraph*—The said plaintiff, William Collarn, for

further and additional paragraph of complaint, says that said defendant was and is a corporation duly and legally organized under and by virtue of the laws of the State of Indiana, and was and is engaged in the general carrying on and management of a general railroad business between the cities of Cincinnati, Ohio, and St. Louis, Missouri ; that the railroad track of said defendant passes through the city of Seymour, and the county of Jackson, in the State of Indiana, and that on the 22d day of July, 1874, the plaintiff was employed by said defendant, as a laborer upon the railroad track of said defendant, and as such, it was his duty to assist in the repairing and keeping in good repair, the railroad track of said defendant ; that at the same time the said defendant was managing, operating and running locomotive engines of said defendant, on and along, over and upon the railroad track of said defendant ; that plaintiff had nothing whatever to do with the management, running or operating of said locomotive engines of said defendant, nor had he any right, power or authority to give any orders or direction, in reference to the running, managing or operating of the same ; that on the day and year last aforesaid, plaintiff was by said defendant, ordered and directed to work upon the said defendant's railroad track in the city of Seymour, Indiana, at repairing the same ; that while said plaintiff was so engaged at work for said defendant, in obedience to the orders and directions aforesaid, the said defendant did then and there, carelessly, negligently and recklessly run a locomotive along and upon the railroad track of said defendant ; that said defendant, by blowing the whistle of said locomotive, could have given plaintiff warning of its approach, and that plaintiff could have been easily notified thereof, and warned of the danger, and it was the duty of the defendant so to do, but not regarding its duty in this respect, it neglected to give plaintiff any notice of the approach of said locomotive ; but that said defendant did run said locomotive carelessly, negligently and recklessly, against, on and upon, and over him, the said plaintiff, and by means thereof, the said plaintiff, then and there had his right leg mashed, bruised and cut off.

Plaintiff avers, that the injury before stated, which he received, was caused without any fault or negligence on his part, and that he was in no wise guilty of contributory negligence thereto.   Plaintiff

further avers, that the aforesaid injury received by him in the manner and form aforesaid, was so great, and of such serious character, that he had to employ a physician and surgeon to amputate his said right leg, and to attend upon him for a period of time of six months' duration, the services of whom are of the value of one thousand dollars, for which said plaintiff is liable and bound to pay, and a portion of which he has already paid; that he was put to great trouble and expense, to-wit: the sum of six hundred dollars, in procuring the attention and nursing for a long space of time, to-wit: six months. That he was thrown out of employment, by reason of which he has sustained damages in the sum of one thousand dollars. Said plaintiff avers, that by reason of said injury, he suffered great pain, and, in consequence of said injury, he has become wholly unfitted and unable to prosecute his labor and work, and make a living for himself and family. Plaintiff finally avers, that by reason of the foregoing premises, he has sustained damages in the sum of fifty thousand dollars.

This paragraph charges the negligence by which the plaintiff was injured directly upon the defendant itself, and not merely upon its employes, and is good upon demurrer for want of sufficient facts. *The Indianapolis, etc., Railroad Co.,* v. *Keeley's Adm'r,* 23 Ind. 133; *Hildebrand, Adm'r.* v. *The Toledo, etc., Railway Co.* 47 Ind. 399.

An allegation of the paragraph is that " this defendant did run said locomotive carelessly, negligently and recklessly against, on and upon and over him, the said plaintiff, and by means thereof," etc.

It is not certain from the allegation in what the alleged carelessness and negligence of the defendant in running the locomotive consisted, but the defect should have been reached by a motion to make the paragraph more specific. *Fultz* v. *Wycoff,* 25 Ind. 321; *The Cincinnati, etc. R. R. Co.* v. *Chester,* 57 Ind. 297; *The Brookville, etc. Turnpike Company* v. *Pumphrey,* 59 Ind. 78; *The Pennsylvania Company* v. *Sedgwick,* id. 336.

There is no hardship in this rule of pleading. Carelessness and negligence in running the locomotive were directly imputed to the defendant, whereby the plaintiff was injured, and if the defendant had desired a more specific statement of the negligence imputed to it, that end could have been attained by motion.

The mere negligence of a co-employe with the plaintiff engaged in the same general undertaking could not be said to be the negligence of the defendant.  But the defendant may have been justly held guilty of negligence in knowingly running the locomotive by the agency of careless or incompetent persons.  The language of the paragraph is broad enough to admit evidence of this kind.  It was said in the case above cited from 47 Ind. 399, that "these are direct charges of negligence against the defendant itself, and are not confined to the negligence of its servants in killing a co-servant, and are broad enough to admit evidence of all kinds and grades of negligence the part of the defendant."

Indeed, in holding the paragraph good on demurrer, it is necessarily assumed, that under its general allegations, proof may be given of any acts or circumstances of negligence on the part of the defendant in running the locomotive.

We are of the opinion that no error was committed in overruling the demurrer to the fourth paragraph of complaint; and for reasons hereinafter stated, we have not thought it necessary to consider the third paragraph.

We proceed to consider the question arising on the demurrer to the evidence.

There was evidence tending to prove:  That the plaintiff, at the time of the injury complained of, July, 1874, was in the employment of the defendant, as a track hand, under the direction and control of Thomas McDonald, an employe of the defendant; and that the plaintiff had been in such employment ten or twelve years.

That it was the custom of the defendant, upon the arrival of the morning train from Cincinnati, at Seymour, to change engines at the latter place, leaving the one just arrived with the train at that place, and taking a fresh engine for the continuance of the route west.

That the engine to be left, in order to reach the round house, had to back over some portion of the track that needed new rails.

That on the morning of the day of the injury, McDonald directed the plaintiff and some other hands to make preparations for taking up five old rails at the place indicated, and replacing them with new, so that the work might be done by noon; and for this purpose he directed them as soon as the train should arrive

from Cincinnati, and before the engine should back up to go to the engine house, a space of time usually of fifteen or twenty minutes, and sometimes more, to go to work and unscrew some of the bolts to the fish-plates fastening the ends of the rails together, so that the rails might be taken up and replaced soon after the engine should pass back to the round house.

That in obedience to these directions, and before the engine had passed back, the plaintiff and the other hands went to work loosening the bolts and getting ready to remove the rails as soon as the engine should have passed back.

Thus while the plaintiff was thus at work, in a stooping posture, with his face to the east, and his back to the approching engine, it backed up and run over and crushed his leg about midway between the knee and ankle joint, making amputation above the knee necessary.

That the engine backed up with a speed of from six to twelve miles an hour, without the ringing of a bell or the sounding of a whistle. That as the engine was backing up, there was a freight train slowly moving out in the opposite direction on a track near by.

That the distance from the point where the engine started to back, to the point where the plaintiff was struck, was three or four hundred yards, with a slightly up-grade. The track was straight, and there was nothing to prevent the person running the engine from seeing the plaintiff at work upon the track; nor was there any thing that prevented the plaintiff from seeing the engine as it approached, if he had looked in that direction. McDonald, the superintendent of that work, was near by when the accident occurred, and called out about the time the plaintiff was struck, but gave no other warning.

That upon the arrival of the train at Seymour, Baker, the engineer, instead of taking the engine to the engine house, entrusted it for that purpose, to one King, his fireman, who was not an engineer, and was not employed by the defendant as an engineer, but only as a fireman, and was not competent to run or take charge of an engine.

That some time before the accident occurred, upon the occasion of an engine being run through the round house by the carelessness of some one, an order was made by the company not to allow firemen to handle engines, but it was made the duty of engineers to

place their engines in the engine or round house, and not leave them to the firemen; that this order was adopted along in the spring, before the plaintiff was hurt, and continued in force up to that time.

That notwithstanding this order, it was violated by almost all the engineers, who, upon arrival at Seymour, would leave their engines to the care of the firemen, to be placed in the engine house.

That the master mechanic of the defendant at the time of the promulgation of the order of the defendant prohibiting engineers from trusting their engines to firemen, and at the time of its violation by the engineers, and at the time of the accident, and whose province and duty it was, among other things, to employ, retain or discharge engineers and firemen, held his office of business at Seymour, within two or three hundred feet of the point where the engines were exchanged, and was there frequently upon the arrival of trains. And that at the time of the injury, the plaintiff had no notice of the habit of the engineers of leaving their engines, upon the arrival of trains, to be taken charge of by the firemen.

"On a demurrer to evidence, everything will be taken against the party demurring which the evidence tends to prove, including every fair inference to be drawn from it." *Eagan* v. *Downing*, 55 Ind. 65.

"By a demurrer to evidence, all the facts of which there is any evidence are admitted, and all the conclusions which can fairly and logically be deduced from these facts." *Newhouse* v. *Clark*, 60 Ind. 172.

Applying the law to the case made by the evidence, we may observe that while a railroad company is not responsible to one employe for an injury resulting from the mere negligence or incompetence of a co-employe in the same general employment, it is liable, in such case, where the company has been guilty of negligence in the employment of, or, after notice, continuing in employment, the negligent or incompetent employe, thereby conducing to the injury.

In the case of the *The Chicago, etc., Railroad Co.* v. *Harney*, 28 Ind. 28, this court said, speaking by Frazier, J.: "Then, again, a master ought to be bound to all the world to employ none but competent and trustworthy servants, as far as reasonable care in their selection can accomplish that end; and if he fails in this,

knowing the incompetency or carelessness of those whom he takes into his service, he ought to answer to his other servants for the consequences which may result to them." See, also, *Thayer* v. *The St. Louis, Alton, etc., R. R. Co.,* 22 Ind. 26; *The Pittsburgh, etc., Railway Co.* v. *Ruby,* 38 Ind. 294. The rule, to which numerous authorities are cited, is thus stated in 2d Thomp. on Neg. p. 974, §4 (2.): "If the master has failed to exercise ordinary or reasonable care in the selection of his servants, in consequence of which he has in his employ a servant who, by reason of habitual drunkenness, negligence, or other vicious habits, or by reason of want of the requisite skill to discharge the duties which he is employed to perform, or for any other cause, is unfit for the service in which he is engaged, and if, in consequence of such unfitness, an injury happens to another servant, the master must answer for the damages suffered by such servant."

There is some discrepancy in the cases as to when negligence is a question of law, when of fact, and when compounded of law and fact. The subject is very well elucidated in the case of *Railroad Company* v. *Stout,* 17 Wall. 657. There a child of the age of six years had wandered upon the road of the company, and had got his foot crushed by a turn-table which had been left unsecured and unguarded. He recovered a judgment of $7,500 in the Circuit Court for the District of Nebraska, which was affirmed by the Supreme Court.

Mr. Justice *Hunt,* in delivering the opinion of the court, said, upon the subject above mentioned:

"It is true, in many cases, that where the facts are undisputed, the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts come in question, rather than where deductions or inferences are to be made from the facts. If a deed be given in evidence, a contract proven, or a breach testified to, the existence of such deed, contract or breach, there being nothing in derogation of the evidence, is no doubt to be ruled as a question of law. In some cases, too, the necessary inference from the proof is so certain that it may be ruled as a question of law. If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled

as a matter of law that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives.   So if a coach driver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law.

"On the other hand, if he had placed a suitable distance between his coach and the precipice, but by the breaking of a rein or an axle, which could not have been anticipated, an injury occurred, it might be ruled as a question of law that there was no negligence and no liability.   But these are extreme cases.   The range between them is almost infinite in variety and extent.   It is in relation to these intermediate cases that the opposite rule prevails.   Upon the facts proven in such cases it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts.   Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used, and that there was no negligence.   It is this class of cases, and those akin to it, that the law commits to the decision of a jury.   Twelve men, of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer—these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw an unanimous conclusion.   This average judgment, thus given it, is the great effort of the law to obtain.   It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

In no class of cases can this practical experience be more wisely applied than in that we are considering.   We find, accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us, that although the facts are undisputed, it is for the jury and not for the judge to determine whether proper care was given, or whether they established negligence.

If the case before us had gone to the jury, that body would have

been authorized to determine, under proper instructions if required, as matters of fact, whether under the circumstances, the plaintiff was himself free from negligence contributing to his injury, and also whether the defendant was guilty of the negligence imputed to it.

The court, on the demurrer to the evidence, was bound to take as true all the facts which the evidence tended to prove, and such inferences from them as the jury might fairly have drawn, though the jury might not have drawn such inferences.

Now, it seems to us from all the evidence, that it may be fairly inferred that the plaintiff himself was free from negligence. He was directed to do the work at the time he was doing it. There seemed to be a reason or necessity for commencing the work before the engine passed back, and he, in obedience to orders commenced it. His back was toward the engine as it approached him. He had no notice that it was in the hands of the fireman and not the engineer. A freight train was moving out at the same time, the noise of which may have diverted his attention from and drowned the noise of the engine as it approached him. He might reasonably have supposed that he would be notified of the approach of the engine, either by the ringing of the bell, or the sounding of the whistle.

It needs no argument to show that the engineer was guilty of negligence, and a violation of his duty, in placing his engine in the hands of a fireman, and one incompetent to manage it, contrary to the rules of the defendant; or that the fireman was incompetent, or culpably negligent in running the engine as stated, without ringing the bell or sounding the whistle, and apparently without taking the trouble to observe whether he had a clear track, or otherwise.

Now, it may be inferred from the evidence that the master me·chanic of the defendant, whose province it was to employ and discharge engineers and firemen, had ample notice of the practice of the engineeers of violating the order of the defendant by placing their engines in the hands of the firemen; and that the practice led to the placing of the engine in question in the hands of the fireman incompetent and unfit to manage it.

Yet the inference is that no stop was put to the practice, nor were any engineers discharged in consequence of it.

Notice to the master mechanic, clothed by the company with such powers, was notice to the company, and his act in thus permitting the order to be violated, and the engineers to thus consign their engines to the firemen, must be deemed the act of the company. This view is fully sustained by the authorities.

In the case of *The Pittsburg, etc., Railway Companye* v. *Ruby*, 38 Ind. 294, 322, Downey, J., speaking for the court, said : " We think that notice to an agent of a corporation, relating to any matter of which he has the management and control, is notice to the corporation, and we do not see why this rule is not applicable here. * * * As it was the duty of the master of transportation to communicate all matters concerning his agency to his principal, it may be presumed that he did so. But, whether he did so or not, notice to him is notice to his principal, when it relates, as it did here, to the business which he was transacting for the company. He was placed in his position that he might make himself acquainted with the conduct of those who were placed under his direction and control, and he seems to have had the power to appoint and remove, promote and degrade, those who were engaged in the business of which he had oversight."

In *Baulee* v. *New York, etc.*, *R. R. Co.*, 59 N. Y. 356, it is said that, " when the master is a corporation, necessarily acting by and through agents, the acts of its general agents charged with the employment and discharge of servants, in the performance of that duty, must be regarded as its acts. · The corporation should be regarded as constructively present in all acts performed by its general agents within the scope and range of their ordinary employment."

The case of *Harper* v. *The Indianapolis & St. Louis R. R. Co.*, 47 Mo. 567, S. C. 4 Am. Rep. 353, was, in many of it features, much like the present; see, also, 2 Thomp. Neg. p. 1,028, § 34; *Patterson* v. *Pittsburgh, &c.*, *R. R. Co.*, 76 Penn. 389; S. C. 18 Am. Rep. 412.

It is clear enough from the evidence that the defendant was guilty of negligence in permitting its order, above mentioned, to be violated by its engineers, and in retaining them in its employment after notice of their practice of abandoning their engines to the firemen, which led to placing the engine in question in the hands of

a careless fireman, incompetent to manage it, whereby the injury to plaintiff occurred.

The company may well be said, in general terms, to have been careless and negligent in running the engine, by means of the careless and incompetent person thus placed in charge for that purpose.

No error was committed in overruling the demurrer to the evidence.

We do not feel authorized to disturb the judgment on the ground that the damages assessed were excessive.

What was said by *Kent, C. J.*, nearly seventy years ago, in the case of *Coleman* v. *Southwick*, 9 John. R. 45, 51, is as much the law now as it was then. He said: "The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal loss and injuries."

Considering the physical and mental suffering which the plaintiff must have endured, and the dismembered condition in which he must pass the residue of life, together with the chances of his general health being impaired and his life shortened by the accident, we cannot say that the damages were excessive.

There remains but one further point to be considered, which relates to the ruling of the court on the demurrer to the third paragraph of complaint.

We think it entirely immaterial whether that paragraph was good or bad; and, if bad, that no harm was done the defendant by the ruling on the demurrer. That paragraph might be entirely eliminated from the record, and the judgment be sustained.

Conceding the paragraph to be bad, no verdict was founded upon it, nor does the judgment necessarily rest upon it.

If the jury had passed upon the evidence, they might have

found for the plaintiff on the fourth paragraph only ; and in that event the ruling on the demurrer to the third would have been of no importance, and could have done no harm.

The jury, had they passed upon the matter, might well have found for the plaintiff on the fourth paragraph, for the evidence warranted such verdict.

If the third paragraph was not good, it may be presumed that the court below, on overruling the demurrer to the evidence, applied the evidence to the good paragraph, and not to the bad one.

The case is entirely unlike those where there are several paragraphs of complaint, some good and some bad, but all held good on demurrer, and there is a general verdict for the plaintiff, and nothing in the record to show that it was on the good paragraphs.  See *Schafer* v. *The State*, 49 Ind. 460 ; *The Pennsylvania Company* v. *Halderman*, 69 Ind. 18, and cases there cited.

In such cases the court cannot say that the error in holding the bad paragraph good was harmless, because it cannot say that the evidence supported and made out the good paragraphs, and entitled the plaintiff to verdict and judgment thereon, as if the bad paragraphs had not been in the record, all of which appears in the case before us.

The judgment below is affirmed with costs.

It having been made to appear that since the submission of this cause the appellee has departed this life, it is ordered that the judgment herein be rendered as of the term at which the cause was submitted.